**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
```
                                        :
ALLSTATE INSURANCE COMPANY,             :
                                        :
                        Plaintiff,      :
                                        :
            v.                          :    Case No. 17-cv-12000
                                        :
ABNER JOSEPH,                           :
                                        :
                        Defendant.      :
                                        :
```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**<u>VERIFIED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF</u>**

Plaintiff Allstate Insurance Company ("Allstate"), by and through its undersigned attorneys, alleges as follows for its Verified Complaint for Injunctive and Other Relief against Defendant Abner Joseph ("Joseph"):

**NATURE OF THE CASE**

1.     This action is the result of Defendant Joseph failing to comply with certain promises and obligations he made when he executed the "Allstate R3001S Exclusive Agency Agreement" ("EA Agreement") with Allstate on or about December 3, 2014, and his misappropriation of Allstate's confidential information and trade secrets.

2.     Specifically, Joseph agreed not to compete with Allstate from any office or business located within one (1) mile of his Allstate Exclusive Agency for one (1) year from the date of termination of the EA Agreement.  Unfortunately, Joseph refused to honor this obligation by setting up a competing agency in the very same office as his former Allstate Exclusive Agency, and then lying about it to Allstate by claiming that he was only operating a tax business out of his former Allstate Agency location.

3.      Joseph also agreed, upon termination of his EA Agreement, to transfer all phone numbers to Allstate that he used to conduct business under the EA Agreement ("Allstate Phone Numbers").   Unfortunately, Joseph refused to honor this obligation as well.   Instead of transferring the Allstate Phone Numbers when his EA Agreement terminated, Joseph kept the Allstate Phone Numbers and is now actively using the Allstate Phone Numbers to support his competing insurance agency.   As a result, Allstate customers and potential customers who attempt to reach Allstate through the Allstate Phone Numbers are instead being solicited by an Allstate competitor.

4.      In addition, upon information and belief, Joseph has misappropriated Allstate's confidential information and trade secrets, for his own benefit and the benefit of his competing insurance agency, in violation of the EA Agreement and the federal Defend Trade Secrets Act, 18 U.S.C. § 1832, *et seq.* ("DTSA").

5.      Joseph's conduct is a direct breach of his contractual obligations to Allstate as well as other applicable laws, including the DTSA.   Accordingly, Allstate now brings suit against Joseph for breach of contract, interference with advantageous relations, and violations of the DTSA.   In doing so, Allstate respectfully asks the Court to enter an order requiring Joseph to cease competing with Allstate out of his current office location and/or within one mile thereof for one year, to transfer the Allstate Phone Numbers to Allstate, and to cease using or disclosing, and immediately return, all Allstate confidential information and trade secrets.

**THE PARTIES AND RELEVANT ENTITIES**

6.      Allstate is an Illinois corporation with its principal place of business located in Northbrook, Illinois.

7.      Joseph is a citizen of the Commonwealth of Massachusetts and, upon information and belief, resides at 39 Blossom Street, Dedham, Massachusetts 02026.

8.    Based upon information and belief, Joseph owns and operates Damelia Insurance Agency.  Damelia Insurance Agency is an Allstate competitor.

## JURISDICTION AND VENUE

9.    This Court has subject matter jurisdiction over this dispute, pursuant to 28 U.S.C. § 1331, because Allstate's claim against Joseph under the federal Defend Trade Secrets Act, 18 U.S.C. § 1832, *et seq*., raises a federal question. Allstate's remaining claims fall within the Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, because the claims are so related to the federal question that they form part of the same case or controversy. Alternatively, this Court has diversity jurisdiction, pursuant to 28 U.S.C. § 1332(a), because this action and controversy is between citizens of different states and exceeds the value of $75,000, exclusive of interest and costs.

10.   This Court has personal jurisdiction over Joseph because he is a citizen and resident of Massachusetts.  Venue is proper in the United States District Court for the District of Massachusetts, pursuant to 28 U.S.C. § 1391(a), because Joseph resides in this District and a substantial part of the events giving rise to Allstate's claims occurred in this District.

## BACKGROUND
### Allstate's Business and Hiring of Independent Agents

11.   Allstate is one of the nation's leading providers of insurance products and services (jointly, "products") to individuals and businesses.

12.   In addition to providing these products directly, Allstate appoints independent exclusive agents ("Exclusive Agents"), through its Exclusive Agency Program, to sell Allstate products.

13.     Allstate rigorously screens its Exclusive Agents to ensure that the agents are qualified to represent and sell Allstate products, have the proper tools and facilities to analyze and meet customer needs, and can furnish customers with appropriate insurance solutions.

14.     Allstate expends substantial resources advertising, marketing, and promoting its products.  The Exclusive Agents benefit directly and indirectly from Allstate's advertising, marketing and promotion efforts, as well as from Allstate's goodwill, reputation and name recognition. These efforts and expenditures allow the Exclusive Agents to develop and cultivate accounts and relationships on behalf of Allstate.

15.     Allstate relies heavily upon repeat business and renewal of policies to maintain its competitive advantage in the highly competitive insurance industry. Maintaining goodwill and a solid business reputation with its customers is a critical component of Allstate's success. Indeed, because Allstate's business is a service business, the relationship that each Exclusive Agent has with Allstate customers is highly dependent on the attention and excellent service given to the customer on an ongoing basis, and the continued trust the customers place in Allstate as a leading provider of such services.

**Protection of Allstate Confidential Information**

16.     Allstate and its customers entrust Allstate Exclusive Agents to safeguard and protect their private information, which includes information relating to, among other things, their personal data, date of birth, social security numbers, types of policies, amount of insurance, premium amounts, description and location of assets and property, claims histories, insurance needs, pricing information, and other insurance coverage information, from unauthorized use or disclosure. Access to confidential information regarding Allstate customers was provided to or gained by Joseph because he was an Exclusive Agent for Allstate.  Joseph would not have had

access to confidential information about Allstate customers before entering into his relationship with Allstate.

17.     Allstate protects its information (described in paragraph 16) by, among other things: limiting the disclosure and use of this information to only the Exclusive Agents and their employees who need the information to sell Allstate products; educating the Exclusive Agents about the requirement and necessity of keeping this information confidential; restricting access to this information by restricting access to computer networks and requiring the use of passwords to access the information; and, as discussed below, requiring the Exclusive Agents to execute written agreements that protect against the misuse and improper disclosure of Allstate confidential information.

18.     Consequently, all Exclusive Agents, pursuant to their Allstate Agreements and while performing services under their Allstate Agreements, acknowledge that they will have access to Allstate confidential information, promise to not disclose Allstate confidential information to anyone not authorized to receive it, and confirm that they will not use Allstate confidential information for their own benefit or for any improper purpose.

19.     Exclusive Agents agree, upon termination of their relationship with Allstate, to continue treating Allstate confidential information as confidential, not disclose, either directly or indirectly, Allstate confidential information to any third party, and immediately return all Allstate confidential information to Allstate.

20.     Hence, Allstate's confidential and proprietary information is not available to the general public and is closely guarded by Allstate.  Allstate keeps such information strictly confidential in order to protect its customers' privacy and to maintain a competitive advantage in the highly competitive insurance business. The time, expense, and effort that goes into the

development of Allstate confidential and proprietary information is such that the independent development of identical or comparable materials by Allstate competitors would be extraordinarily difficult and expensive.

**Joseph Enters Into the EA Agreement with Allstate to Solicit and Sell Allstate Products**

21.     After proceeding through Allstate's rigorous screening process to become an Exclusive Agent, Joseph executed the EA Agreement with Allstate on or about December 3, 2014, and became an Exclusive Allstate Agent. (A true and correct copy of the EA Agreement is attached hereto as Exhibit A).

22.     Pursuant to Section I(A) of the EA Agreement, Joseph was authorized to sell Allstate products, and receive and accept "applications for insurance covering such classes of risks located" in the Commonwealth of Massachusetts. (EA Agreement, § I(A)).

23.     Under the EA Agreement, Joseph acknowledged that the following information is Allstate "confidential information" and property:

> [B]usiness plans of [Allstate]; information regarding the names, addresses, and ages of policyholders; types of policies; amounts of insurance; premium amounts; the description and location of insured property; the expiration or renewal dates of policies; policyholder listings and any policyholder information subject to any privacy law; claim information; certain information and material identified by [Allstate] as confidential or information considered a trade secret as provided herein or by law; and any information concerning any matters affecting or relating to the pursuits of [Allstate] that is not otherwise lawfully available to the public.  All such confidential information is wholly owned by [Allstate].

(EA Agreement, § IV(D)).

24.     Pursuant to Section IV(B) of the EA Agreement, Joseph agreed that he would not, at any time or in any manner, directly or indirectly, use Allstate confidential information for any purpose other than to carry out the provisions of the EA Agreement.  (EA Agreement, § IV(B)).

25.     Pursuant to Sections IV(D) and XVIII(B) of the EA Agreement, Joseph acknowledged that all confidential information he was provided and had access to through Allstate would at all times remain Allstate property, and was to be returned to Allstate upon termination of the EA Agreement and relationship with Allstate.  (EA Agreement, §§ IV(D), XVIII(B)).

26.     The EA Agreement further provided that "[a]ll telephone numbers used in connection with business conducted pursuant to this [EA] Agreement are the property of [Allstate]." (EA Agreement, § IX).

27.     When the EA Agreement and Joseph's relationship with Allstate terminated, Joseph agreed to a number of post-termination obligations. Among other things, Joseph agreed that, after termination of the EA Agreement, he:

    a.      will immediately return all property belonging to [Allstate], or dispose of it in such manner [Allstate] specifies; and

    b.      will immediately cease to use such telephone numbers referenced in Section IX [of the EA Agreement] and execute an Order of Transfer of Responsibility for such numbers in [Joseph's] name to [Allstate] or to any party [Allstate] designates, and [he] will immediately notify the telephone company of any such transfer.

(EA Agreement, §§ XVIII (B) and (C)).

28.     Joseph further agreed that, for a period of one year following termination of the EA Agreement, he would not "solicit the purchase of products or services in competition with those sold by [Allstate] . . . [f]rom any office or business site located within one mile of the agency sales location maintained pursuant to . . . this [EA] Agreement at the time this [EA] Agreement was terminated."  (EA Agreement, §XVIII(D)(3).

29.     Joseph acknowledged that a failure to comply with the duties and obligations he owed Allstate under the EA Agreement, including competing with Allstate within one mile of his

former Allstate Agency location, failing to transfer all telephone numbers Joseph used to conduct Allstate business, and using and/or failing to return all confidential Allstate information, would be a breach of the EA Agreement and would "cause irreparable damage to [Allstate's] business" that would be "difficult or impossible to measure."  (EA Agreement, § XVIII(F)).

30.     Consequently, Joseph agreed that, if he breached Sections IV, IX, or XVIII of the EA Agreement, then Allstate "will be entitled to an order granting injunctive relief from any court of competent jurisdiction against any act which would violate [the EA Agreement] . . . without the necessity of posting a bond," in addition to other rights and remedies. (*Id.*)

31.     Joseph also agreed that Allstate "will be entitled to an award of reasonable attorneys' fees in the event that it is successful in an application for injunctive relief or in an action based upon a breach of the [EA Agreement]."  (*Id.*)

## Joseph's Relationship With Allstate is Terminated

32.     On or about February 7, 2017, Allstate sent Joseph a 90-day termination notice ("Termination Notice").  The Termination Notice informed Joseph that the EA Agreement was terminated effective June 1, 2017, and that Joseph must immediately cease representing Allstate as of that date.  A copy of the termination notice is attached hereto as Exhibit B.

33.     The Termination Notice stated that Allstate was terminating the EA Agreement "for reasons that include failure to attain variable licensing within the required timeframe."  In other words, Joseph failed to obtain required FINRA licenses within the timeframe he was contractually required to do so.

34.     The Termination Notice was not a surprise to Joseph since Allstate had been reminding Joseph of the need for him to FINRA licensing and Joseph specifically told Allstate that he would not obtain, or attempt to obtain, FINRA licensing.

35.     On May 31, 2017, Allstate's Field Sales Leader ("FSL"), Rick DiBattista travelled to Joseph's office, located at 571 Dudley Street, Suite A, in Boston, Massachusetts, to retrieve any Allstate materials and Allstate customer information from Joseph's office, and to gain access to the Allstate Phone Numbers.  It is customary for Allstate FSL's to inspect a former EA's office after an EA Agreement has been terminated.

36.     DiBattista provided another copy of the Termination Agreement to Joseph at that time.

37.     On May 31, 2017, Joseph claimed that he did not have any hard copies of Allstate materials or Allstate customer information.  He also refused to provide any information that would allow Allstate to transfer the Allstate Phone Numbers back to Allstate.

38.     Joseph's claims that he did not possess any Allstate materials or customer information as of May 31, 2017 are hard to believe since Joseph barely, if ever, used Allstate's electronic systems while an Exclusive Allstate Agent.

39.     Moreover, Allstate had been in Joseph's Exclusive Allstate Agency several times before May 31, 2017 and had seen hard copies of Allstate materials and customer information, including confidential Allstate customer information, sitting on Joseph's desk.

40.     Thus, upon information and belief, Joseph kept hard copies of Allstate customer information while an Allstate Exclusive Agent in order to communicate with Allstate customers.

41.     Also based upon information and belief, Joseph kept hard copies of Allstate customer information after May 31, 2017 in order to compete with Allstate and to solicit Allstate customers and prospective customers on behalf of his competing insurance agency.

42.     In addition, DiBattista instructed Joseph to place a sign in the store to redirect Allstate's customers to another Allstate Exclusive Agent because Joseph's EA Agreement was terminated.

43.     In response, Joseph told DiBattista that he would not put up the sign, and/or tear down any signs DiBattista placed in the store after DiBattista left.

### Joseph Breaches the EA Agreement

44.     As a result of the termination, and pursuant to the EA Agreement, effective May 31, 2017, Joseph was prohibited for one year from selling competing insurance products and services within one mile of his former Allstate Exclusive Agency location.

45.     He was also required to transfer the Allstate Phone Numbers to Allstate at the time his EA Agreement terminated.

46.     In addition, Joseph was prohibited from using or disclosing, and was required to return, all confidential information to Allstate.

47.     Unfortunately, Joseph has continued to operate a competing insurance agency (Damelia Insurance Agency) out of, and to sell competing insurance products and services from, his former Allstate Exclusive Agency location, 571 Dudley Street, Suite A, in Boston, Massachusetts.

48.     Specifically and according to its website (www.dameliainsurance.com), Damelia Insurance Agency provides both personal and business insurance products and services, including the same products and services that Joseph sold on behalf of Allstate, out of 571 Dudley Street, Suite A, in Boston, Massachusetts.  Exhibit C.  Damelia's phone number is the same phone number Joseph used on behalf of Allstate (i.e. the Allstate Phone Number Joseph was required to transfer to Allstate).  (*Id.*)  Under the "About Us" tab on the Damelia website is a

note to customers from Joseph that states, in part:  "On behalf of our local management team and our company associates located in Massachusetts we look forward to the opportunity to providing you superior services, products and serving you when you need us most.  Sincerely[,] Abner Joseph." (*Id.*)

49.    In addition, Joseph has placed signage and advertisements outside his former Allstate Exclusive Agency stating, "Damelia Insurance, Auto & Home Policies" and "Yes, We're Open."  (*See* September 25, 2017 photographs of Joseph's former Allstate Exclusive Agency, Exhibit D).

50.    Upon information and belief, Joseph is also using Allstate confidential information on behalf of the competing insurance agency Joseph runs out of his former Exclusive Allstate Agency location.

51.    Indeed, since June 1, 2017, over fifty (50) Allstate customers have cancelled their policies with Allstate.  This number is significantly higher than the normal cancellation rate and is indicative of Joseph soliciting Allstate customers through the use of Allstate confidential information.

52.    Finally, in addition to operating a competing insurance agency out of his former Allstate Exclusive Agency location and without any justification or legitimate basis, Joseph has refused to transfer the Allstate Phone Numbers to Allstate.

53.    Instead, Joseph kept the Allstate Phone Numbers and is using the Allstate Phone Numbers on his own behalf and to support his competing insurance agency, Damelia Insurance Agency.

54.    Specifically, when someone calls the Allstate Phone Numbers, a person answers the phone "Damelia Insurance Agency, how may we help you?"

55.     Thus, upon information and belief, when an Allstate customer calls the Allstate Phone Numbers looking for an Exclusive Allstate Agent, Joseph solicits the customer on behalf of his competing insurance agency, Damelia Insurance Agency, and tries to entice the Allstate customer to leave Allstate for Damelia Insurance Agency.

56.     On June 26, 2017, Allstate contacted Joseph and demanded, *inter alia*, that he immediately transfer the Allstate Phone Numbers to Allstate.  (A true and accurate copy of the June 26, 2017 letter is attached hereto as Exhibit E).

57.     On July 20, 2017, Allstate sent another letter to Joseph reminding him again of his obligations under the EA Agreement and demanding that he immediately comply with his obligations.  (A true and accurate copy of the July 20, 2017 letter is attached hereto as Exhibit F). Allstate demanded that Joseph respond by no later than July 27, 2017.

58.     Joseph sent two e-mails to Allstate on July 24, 2017. In the first email, Joseph agreed to transfer the Allstate Phone Numbers to Allstate.  In the second email, less than an hour later, Joseph requested a call to discuss the July 20, 2017 letter.

59.     Counsel for Allstate subsequently spoke with Joseph by telephone, and although he indicated that he was willing to transfer the Allstate Phone Numbers, Joseph refused to move out of his location, claiming that he was not selling insurance and did not have any appointments with insurance carriers.

60.     However, since that telephone call, Joseph has refused to transfer the Allstate Phone Numbers and has ceased all contact with Allstate.

61.     Moreover, and as discussed above, Allstate has since learned that Joseph is, in fact, selling competing insurance products and services through Damelia Insurance Agency and out of his former Exclusive Allstate Agency location.

62.     In fact, according to the Massachusetts Department of Insurance, Joseph sells insurance lines and products that compete with Allstate, and has appointments with multiple insurance companies that are direct competitors of Allstate.   (True and accurate copies of printouts from the Massachusetts Department of Insurance's website are attached hereto as Exhibit G).  And Joseph's former Allstate Exclusive Agency location once again has signs in the window for Damelia Insurance Agency.  Exhibit D.

## Irreparable Harm to Allstate

63.     By violating the EA Agreement, Joseph is harming Allstate's legitimate business interests by soliciting former Allstate customers for the benefit of a competing insurance agency and using misappropriated Allstate confidential information to do so.

64.     Allstate's trade secrets, confidential information, and goodwill are therefore at risk because Joseph is unfairly competing with Allstate and refusing to return Allstate property.

65.     Allstate has no adequate remedy at law, and unless injunctive relief is granted, Allstate will continue to be irreparably harmed by Joseph's breach of the EA Agreement and use of Allstate's confidential information in a manner that is not fully compensable by money damages.   Injunctive relief is appropriate considering Allstate's significant interest in its trade secrets and confidential information.

66.     In addition, and as discussed above, Allstate's success depends in large part on maintaining and fostering its customer relationships and goodwill. Those relationships and goodwill depend on the service that Allstate provides to its customers.

67.     Allstate's customer relationships and goodwill are threatened with irreparable harm by Joseph operating a competing insurance agency out of his former Allstate Exclusive Agency location because neither Allstate, nor an authorized Allstate representative, will be present to assist Allstate customers and potential customers that show up at the location looking

for help or information with their existing Allstate products, or in purchasing additional or new Allstate products.

68.     Similarly, Allstate customers formerly serviced by Joseph who contact the Allstate Phone Numbers will not reach an Exclusive Allstate Agent or anyone authorized to service their insurance needs.

69.     Accordingly, Allstate's customer relationships and goodwill are threatened with irreparable harm because neither Allstate, nor an authorized Allstate representative, is receiving phone calls from Allstate customers and potential customers that are looking for help or information with their existing Allstate products, or in purchasing additional or new Allstate products.

70.     The harm to Allstate's confidential information and customer relationships is neither knowable nor easily calculable in terms of monetary damages. Thus, Allstate needs injunctive relief prohibiting Joseph from soliciting the purchase of products or services in competition with those sold by Allstate from any office or business site located within one (1) mile of his former Allstate Exclusive Agency location, from using Allstate confidential information, and from using the Allstate Phone Numbers.

71.     Indeed, Joseph agreed that a breach of the EA Agreement by not returning and/or using Allstate confidential information after the EA Agreement terminated, not transferring the Allstate Phone Numbers after the EA Agreement terminated, and/or operating a competing business from his former Exclusive Allstate Agency after the EA Agreement terminated would "cause irreparable damage to [Allstate's] business" that would be "difficult or impossible to measure." (EA Agreement, § XVIII(F)).

## COUNT I
### (Breach of Contract)

72.     Allstate incorporates by reference the foregoing allegations of the Complaint as though fully stated herein.

73.     The EA Agreement is a valid and enforceable contract.

74.     Allstate has performed all material obligations required of it under the EA Agreement.

75.     Under Section XVIII(B) of the EA Agreement, Joseph promised, upon termination of the EA Agreement, to immediately return all property belonging to Allstate.

76.     Joseph further promised, under Section IV(D) of the EA Agreement, to not use Allstate confidential information for any purpose other than carrying out the provisions of the EA Agreement.

77.     Joseph breached, and continues to breach, Sections IV(D) and XVIII(B) of the EA Agreement by refusing to return Allstate confidential information and, upon information and belief, using such information for his own benefit and for the benefit of his competing insurance agency, Damelia Insurance Agency.

78.     Section XVIII(C) of the EA Agreement provides that, after termination of the EA Agreement, Joseph "will immediately cease to use such telephone numbers referenced in Section IX [of the EA Agreement] and execute an Order of Transfer of Responsibility for such numbers in [Joseph's] name to [Allstate] or to any party [Allstate] designates, and [he] will immediately notify the telephone company of any such transfer."  (EA Agreement, §XVIII(C)).

79.     Joseph breached, and continues to breach, Section XVIII(C) of the EA Agreement by failing and refusing to transfer to Allstate all telephone numbers he used to conduct business under the EA Agreement when the EA Agreement terminated.

80.     Section XVIII(D)(3) of the EA Agreement provides that, for a period of one (1) year following termination of the EA Agreement, he would not "solicit the purchase of products or services in competition with those sold by [Allstate] . . . [f]rom any office of business site located within one mile of the agency sales location maintained pursuant to . . . this [EA] Agreement at the time this [EA] Agreement was terminated."  (EA Agreement, §XVIII(D)(3)).

81.     Joseph breached, and continues to breach, Section XVIII(D)(3) of the EA Agreement by selling competing insurance products and services from his former Allstate Exclusive Agency location.

82.     The post-termination covenants found in the EA Agreement are reasonable in scope and duration, and are necessary to protect Allstate's legitimate business interests in its confidential information, goodwill, and longstanding customer relationships.

83.     As a direct and proximate result of Joseph's breaches of the EA Agreement, Allstate has been harmed and continues to be harmed.  Specifically, Allstate's confidential information and trade secrets, and its customer relationships and goodwill, are threatened with irreparable harm by Joseph's conduct because neither Allstate nor an authorized Allstate representative is present or receiving phone calls from Allstate customers and potential customers who call the Allstate Phone Numbers looking for help or information with their existing Allstate products or in purchasing additional or new Allstate products.

84.     Allstate has been harmed, and continues to be harmed, by Joseph directly competing with Allstate within one mile of his former Allstate office location, and by Joseph using Allstate's confidential information and trade secrets to compete with Allstate.

85.     Allstate seeks compensatory damages and injunctive relief that requires Joseph to a) cease competing with Allstate within one mile of his former Allstate office location, b) stop

using Allstate confidential information and immediately return all Allstate confidential information to Allstate, and c) transfer the Allstate Phone Numbers to Allstate.

## COUNT II
### (Interference With Advantageous Relations)

86.     Allstate incorporates by reference the foregoing allegations of the Complaint as though fully stated herein.

87.     Over the course of its operations, Allstate has developed valuable business and economic relationships with existing and prospective customers, which relationships held probable future economic benefit or advantage to Allstate.

88.     Joseph knew, or should have known, of the existence of the relationships between Allstate and its existing and prospective customers.

89.     Upon information and belief, Joseph has intentionally, and with improper motive or means, interfered with said relationships through improper motive or means by competing with Allstate in violation of the EA Agreement and refusing to transfer the Allstate Phone Numbers.

90.     As a direct and proximate result of Joseph's conduct as alleged herein, Allstate's advantageous economic relationships and expectancy with existing and prospective customers have been harmed and interfered with.

## COUNT III
### (Violation of the Federal Defend Trade Secrets Act, 18 U.S.C. §§ 1832, *et seq.*)

91.     Allstate incorporates by reference the foregoing allegations of the Complaint as though fully stated herein.

92.     During the course of his relationship with Allstate, Joseph was provided access to substantial amounts of Allstate confidential information, including the confidential information.

93. Joseph also had access to additional types of Allstate confidential information, such as: Allstate business plans; information regarding the names, addresses, and ages of policyholders or prospective policyholders of Allstate; types of policies; amounts of insurance; premium amounts; the description and location of insured property; the expiration or renewal dates of policies; policyholder listings; policyholder information that is subject to privacy law; and claim information.

94. Allstate confidential information is not available to the general public and is closely guarded by Allstate. Allstate keeps such information strictly confidential in order to maintain a competitive advantage over competitors.

95. Allstate confidential information, including the information identified herein, is considered a "trade secret" under the Defend Trade Secrets Act, 18 U.S.C. § 1832, *et seq.* ("DTSA"), because the information is not generally known outside of Allstate's business, Allstate has taken reasonable measures to guard the secrecy of the information, the information is of great value to Allstate and its competitors, Allstate invested significant amounts of time and money in developing the information, the information cannot easily be acquired or duplicated by others, and because Allstate continuously uses the information in its business.

96. The economic value of the Allstate trade secrets/confidential information Defendants had access to under their Allstate Agreements is over $500,000.

97. Upon termination of the Allstate Agreements, Joseph was required to return Allstate confidential information to Allstate, but he refused to do so, claiming that he had none.

98. Joseph's claims that he did not possess any Allstate materials or customer information are hard to believe since Joseph barely, if ever, used Allstate's electronic systems while an Exclusive Allstate Agent.

99.     Thus, upon information and belief, Joseph kept hard copies of Allstate customer information  while an Allstate Exclusive Agent in order to communicate with Allstate customers.

100.     Also based upon information and belief, Joseph kept hard copies of Allstate customer information, after May 31, 2017, in order to compete with Allstate.

101.     Unless restrained, Joseph will use, divulge, and/or otherwise misappropriate Allstate confidential information.  Indeed, upon information and belief, Joseph has used and continues to use, Allstate confidential information and trade secrets on behalf of Damelia Insurance Agency, a direct competitor of Allstate.

102.     As such, Joseph is using Allstate confidential information in order to unfairly compete with Allstate.

103.     Defendants' continued possession and use of Allstate confidential information demonstrates that Joseph has no intention of complying with the terms of the EA Agreement or the law.

104.     Naturally then, Allstate requests an order enjoining Joseph from using any Allstate confidential information, and from disclosing Allstate confidential information to anyone not authorized to receive the confidential information.

105.     Allstate also requests an order requiring Joseph to return any and all Allstate confidential information to Allstate.

106.     Finally, Joseph's misappropriation of Allstate confidential information has been willful and malicious, and Allstate has incurred significant damages as a result of his misappropriation of Allstate confidential information.

107.     Joseph's actions have damaged Allstate's goodwill, reputation, and legitimate business interests.

108.    Allstate is therefore entitled to compensatory and exemplary damages in an amount to be proven at trial, as well as reasonable attorneys' fees.

**WHEREFORE**, Allstate Insurance Company respectfully requests that this Court:

1.    Enter an injunction enjoining and restraining Defendants, and their agents, representatives, associates, employees, and all those acting in concert or participation with them, from using any Allstate confidential information for their own benefit and from disclosing Allstate confidential information to anyone not authorized to receive the information;

2.    Enter an order requiring Joseph to immediately return all Allstate confidential information to Allstate;

3.    Enter an injunction enjoining and restraining Joseph, and his agents, representatives, associates, employees, and all those acting in concert or participation with him, for one year from the date of entry of such injunction, from soliciting the purchase of products or services in competition with those sold by Allstate from any office of business site located within one (1) mile of his former Allstate Exclusive Agency location;

4.    Enter an order requiring Joseph to immediately transfer all telephone numbers used to conduct business under the EA Agreement to Allstate;

5.    Enter judgment against Joseph for compensatory damages in an amount to be determined at trial.

6.    Award Allstate the costs and expenses, including reasonable attorneys' fees, Allstate incurs as a result of Joseph's breach of the EA Agreement, as provided by Section XVIII(F) of the EA Agreement, and pursuant to the DTSA.

7.    Award Allstate such other relief as the Court may deem just and proper.

Respectfully submitted,

ALLSTATE INSURANCE COMPANY,

By its attorneys,

   */s/ Dawn Mertineit*      
Erik W. Weibust
  eweibust@seyfarth.com
Dawn Mertineit
  dmertineit@seyfarth.com
SEYFARTH SHAW LLP
Two Seaport Lane, Suite 300
Boston, Massachusetts  02210
Tel: (617) 946-4800

Dated: October 16, 2017

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the statements set forth in the foregoing Verified Complaint for Injunctive and Other Relief are true and correct to the best of my knowledge, except as where such statements are made upon information and belief.

Dated: October ⎣3, 2017

Rick DiBattista

41072520v.1