## ALLSTATE R3001S EXCLUSIVE AGENCY AGREEMENT

This Agreement is between ALLSTATE INSURANCE COMPANY and such affiliates and subsidiaries as are named in the Supplement for the R3001 Agreement (referred to in this Agreement as "the Company") and _Abner Joseph_ (referred to in this Agreement as "you").

The Company and you agree as follows:

I. **AUTHORITY:**

A. Effective _December 1 2014_, the Company appoints you as its agent to represent the Company in the Exclusive Agency Program. You are authorized on behalf of the Company, during the term of this Agreement, to receive and accept, subject to such restrictions on binding authority as may be established by the Company, applications for insurance covering such classes of risks located in the state(s) of _MA_ as the Company may from time to time authorize to be written. You are also authorized to sell products specified by the Company and through the companies specified in the Supplement for the R3001 Agreement (referred to in this Agreement as "Company Business"). The Company will own all business produced under the terms of this Agreement. You will not represent yourself as having any authority other than that specifically granted to you by the Company. You will not alter any contract or incur any expense or obligation for the Company without prior written approval from the Company.

B. This Agreement is the sole and entire agency agreement between the Company and you, and it supersedes and replaces any prior employment, agency, or other agreement between the Company and you. This Agreement also supersedes any prior oral statements and representations by the Company to you and any prior written statements and representations by the Company to you in letters, manuals, booklets, memoranda, or any other format.

C. The Supplement for the R3001 Agreement ("Supplement") and the Exclusive Agency Independent Contractor Manual ("EA Manual"), and the Allstate Agency Standards ("Agency Standards") as they may be amended from time to time, are expressly incorporated in their entirety as part of this Agreement. The Company reserves the right to amend the Supplement, EA Manual, and Agency Standards at any time without prior notice to you, except that notice regarding changes to commission amounts will be given as indicated in Section XV.

D. You are an independent contractor for all purposes and not an employee of the Company. You will have full control of your time and the right to exercise independent judgment as to the time, place, and manner of performing your duties, which are defined in this Agreement and the incorporated Supplement, EA Manual, and Agency Standards. You will not represent that you have authority to act on behalf of the Company or enter into any contract on behalf of the Company, except for contracts of insurance or other contracts as expressly authorized by this Agreement.

E. You will not, either directly or indirectly, solicit, sell, or service insurance of any kind for any other company, agent, or broker, or refer a prospect to another company, agent, or broker, without the prior written approval of the Company. You may, however, write applications for insurance under an assigned risk, cooperative industry, or government established residual market plan or facility in accordance with the Company's rules and procedures.

1

R3001S-3   04/01/2008

F. The Company will determine in its sole discretion all matters relating to its business and the operation of the Company including, but not limited to, the following:

1. The determination of contract forms and provisions, premiums, fees, and charges for insurance and other Company Business;

2. The acceptance or rejection of any application;

3. The termination or modification of any contract or the refusal to renew any contract;

4. The limitation, restriction, or discontinuance of the writing or selling of any policies, coverages, lines, or kinds of insurance or other Company Business;

5. The obtaining of any licenses of the Company or the Company's withdrawal from any state, jurisdiction, or territory; and

6. The type and quality of customer service received by Company policyholders.

## II. DUTIES AND CONDITIONS:

A. You will act as an agent of the Company for the purpose of soliciting, selling, and servicing insurance and other Company Business in accordance with the provisions of this Agreement. As an agent of the Company, you will provide customer service, including the collection of payments, for any and all Company policyholders and you will assist in claims administration in accordance with the Company's rules and procedures.

B. You will meet certain business objectives established by the Company in the areas of profitability, growth, retention, customer satisfaction and customer service. You will build and maintain a profitable book of business, assist the Company in its efforts to achieve market penetration for all forms of insurance offered by the Company and other Company Business, and service the Company's customers in a manner consistent with the Company's goodwill, reputation, and overall business strategy.

C. You will record, transmit, and process insurance and Company Business in the manner prescribed in the then current provisions of the Supplement.

D. You agree to maintain any required agent license in the state or states in which you are appointed to represent the Company and to comply with any and all applicable federal, state, or local laws, rules, regulations and ordinances affecting your operation.

E. The Company recognizes that you may, in your sole discretion, arrange to have business conducted at your sales location in your absence by your own employees or other persons and that the time during which you are physically present at your sales location is entirely in your sole discretion. You must, however, remain actively involved in the conduct of business at your sales location.

F. You agree that the Company will have the authority to use your name and signature, or facsimile thereof, on policy documents and customer communication materials.

G. You agree to maintain a professional business relationship with the Company, and, when requested, to meet with Company representatives at mutually convenient times to discuss various business topics. You also agree that, because you are conducting business with the public under the Allstate name, Company representatives shall be permitted access to your agency to review compliance with this Agreement during agency business hours.

H. You agree that, as requested by the Company, you will demonstrate your knowledge of the Company products you are authorized to sell, as well as of federal, state, or local laws, rules, regulations and ordinances affecting your operation. If you are unable to demonstrate your knowledge of any product, the Company reserves the right to deny you the authority, or withdraw your existing authority, to sell that product until you demonstrate such knowledge.

## III.   YOUR EMPLOYEES:

A. You have no authority to employ persons on behalf of the Company, and no employee of yours will be deemed to be an employee or agent of the Company, such employees at all times remaining your employees. You have sole and exclusive control over your labor and employee relations policies, and your policies relating to wages, hours, and working conditions of your employees. You have the sole and exclusive right to hire, transfer, suspend, lay off, recall, promote, assign, discipline, and discharge your employees.

B. You are solely responsible for all salaries and other compensation of all your employees and will make all necessary salary deductions and withholdings from your employees' salaries and other compensation. You are solely responsible for the payment of any and all contributions, taxes, and assessments, and all other requirements of the federal Social Security, federal and state unemployment compensation, and federal, state, and local withholding of income tax laws on all salary and other compensation of your employees.

C. You will comply with all other contracts, federal, state or local laws, ordinances, rules, or regulations regarding your employees, including federal or state laws or regulations regarding minimum compensation, overtime, and equal opportunities for employment. This includes, but is not limited to, your warranty and agreement to comply with the terms of the federal and state civil rights acts, Age Discrimination in Employment Act, Americans With Disabilities Act, Occupational Safety and Health Act, Immigration Reform and Control Act, and the Fair Labor Standards Act.

D. You agree and warrant that your employees, while working in connection with this Agreement, will comply with any and all applicable federal, state, or local laws, rules, regulations, and ordinances.

## IV.   COMPANY PROPERTY, CONFIDENTIALITY:

A. The Company will furnish you such signs, forms, manuals, records, and other materials and supplies as the Company deems advisable to assist you. All such property and information furnished by the Company will remain the property of the Company. In addition, the Company will offer, at your expense, such additional materials and supplies as the Company feels may be helpful to you.

B. You agree that you will not at any time or in any manner, directly or indirectly, disclose to any third party or permit any third party to access any confidential information or any information containing trade secrets concerning any matters affecting or relating to the pursuits of the Company, except upon direct written authority of the Company. Furthermore, upon termination of this Agreement, you agree to treat as confidential and not to disclose, either directly or indirectly, to any third party any confidential information or trade secrets of the Company.

C. You agree that you will not disclose or grant access to any confidential information or trade secrets to any of your employees or other persons providing services for you in connection with this Agreement, unless such employee or other person has signed a copy of the Confidentiality and Non-Competition Agreement attached as Appendix A. Appendix A is a sample copy of the electronic version of the document that must be transmitted to the Company.

D. Confidential Information includes, but is not limited to:  business plans of the Company; information regarding the names, addresses, and ages of policyholders of the Company; types of policies; amounts of insurance; premium amounts; the description and location of insured property; the expiration or renewal dates of policies; policyholder listings and any policyholder information subject to any privacy law; claim information; certain information and material identified by the Company as confidential or information considered a trade secret as provided herein or by law; and any information concerning any matters affecting or relating to the pursuits of the Company that is not otherwise lawfully available to the public.  All such confidential information is wholly owned by the Company.  Such confidential information may be used by you only for the purposes of carrying out the provisions of this Agreement.

E. Any confidential information or trade secrets recorded on paper, electronic data file, or any other medium, whether provided by the Company or by you, is the exclusive property of the Company, as is any such medium and any copy of such medium.

F. You recognize that a breach of the foregoing provisions will cause irreparable damage to the Company's business and that such damage is difficult or impossible to measure.  You agree that in the event of such breach, the Company, in addition to such other rights and remedies it may have, will be immediately entitled to an order granting injunctive relief from any court of competent jurisdiction against any act which would violate any such provision, without the necessity of posting a bond, and you waive any defense to an application for such order, except that the violation did not occur.  You agree that the Company will be entitled to an award of reasonable attorneys' fees in the event that it is successful in an application for injunctive relief or in an action based upon breach of the foregoing provisions.

## V.   SALES LOCATION:

A. You may select your sales location, within a geographical area specified by the Company, subject to Company approval. Initially, you have selected the location at _54 Dudley Street_ and such sales location has been approved by the Company.  You agree that you will not establish any additional sales location without the prior written approval of the Company.  You understand that you have no exclusive territorial rights in connection with your sales location.

B. You agree to keep your sales location open for business as appropriate in the market to provide a proper level of customer service.  As a minimum, you agree to operate your sales location consistently with the Agency Standards.

C. You are authorized to sell insurance offered by the Company and Company Business only in the state containing your sales location and other states in which you are properly licensed and appointed as an agent by the Company.

## VI.   ADVERTISING:

A. The Company will advertise its products and provide promotional material in accordance with its advertising policies.  You may also advertise in your sole discretion, subject to the requirements in paragraph B. below.

B. You will submit all signs and advertising copy, including, but not limited to, sales brochures, display advertisements in telephone directories, newspaper advertisements, radio and television commercials, electronic media displays, all sales promotional plans and devices, and all other materials to the Company for approval, if they use or contain any reference to any service mark or trade name of the Company.  You will not use any such advertising material or sales promotional plan or device without obtaining prior written approval from the Company.  The Company has the right to disapprove any or all of the aforesaid advertising forms and other materials insofar as they, in the exclusive judgment of the Company, do not conform to Company policy regarding use of Company service marks or trade names; may subject the Company to liability or loss of goodwill; may damage the reputation of the Company or Company customer relations; may fail to adhere to the requirements of any federal, state, or local governmental rules, regulations, or laws; may fail to

conform to community or Company standards of good taste and honest dealing; or may be detrimental to the business interests of the Company.

**VII.   SERVICE MARK AND TRADE NAME PROTECTION:**

A.  You agree to cooperate fully in the quality control program conducted by the Company relating to the use of its service marks and trade names and the nature and quality of services rendered and goods distributed under its service marks and trade names. The Company will have the right to specify, delineate, or limit the services or goods in connection with which you may use any of its service marks or trade names. In the event that the nature or the quality of the services or goods in connection with which you use any of the service marks or trade names of the Company is not acceptable to the Company, then the Company will have the right to require you to institute appropriate procedures to correct any deficiencies noted by the Company.

B.  You agree, at the request and expense of the Company, to assist the Company in protecting and enforcing the rights of the Company in and to any and all of its service marks and trade names which you may then be using.

C.  You will not in any manner encumber, alienate, license, or transfer to any other entity any right whatsoever concerning the service marks or trade names the Company authorizes you to use in the performance of this Agreement, except as permitted in Section XVI.

D.  You recognize that a breach of the foregoing provisions will cause irreparable damage to the Company's business and that such damage is difficult or impossible to measure. You agree that in the event of such breach, the Company, in addition to such other rights and remedies it may have, will be immediately entitled to an order granting injunctive relief from any court of competent jurisdiction against any act which would violate any such provision, without the necessity of posting a bond, and you waive any defense to an application for such order, except that the violation did not occur. You agree that the Company will be entitled to an award of reasonable attorneys' fees in the event that it is successful in an application for injunctive relief or in an action based upon breach of the foregoing provisions.

**VIII.   EXPENSES:**

You will be responsible for the payment of all expenses that you incur in the performance of this Agreement including, but not limited to: expenses for your sales location, supplies not furnished by the Company, compensation of your employees or other assisting persons whom you engage, telephone, postage, and advertising expenses incurred at your direction, and all other charges and expenses.

**IX.   TELEPHONE:**

All telephone numbers used in connection with business conducted pursuant to this Agreement are the property of the Company.

**X.   INDEMNIFICATION:**

A.  The Company will defend and indemnify you against liability, including the cost of defense and settlements, imposed on you by law for damages sustained by policyholders and caused by acts or omissions of the Company, provided that you have not caused or contributed to cause such liability by your acts or omissions. You agree, as a condition to such indemnification, to notify the Company promptly of any claim or suit against you and to allow the Company to make such investigation, settlement, or defense as the Company deems prudent. The Company reserves the right to select counsel to represent you in connection with any such claim or suit. You also agree to cooperate fully with the Company in any such investigation, settlement, or defense.

B. You will indemnify the Company against liability, including the cost of defense and settlements, imposed on the Company by law for damages sustained by any person and caused by your acts or omission, or those of any employee or other person working in connection with this Agreement, provided that the Company has not caused or contributed to cause such liability by its acts or omissions. The Company agrees, as a condition to such indemnification, to notify you promptly of any such claim or suit against the Company. The Company reserves the right to select counsel to represent it in connection with any such claim or suit and to make such investigation or settlement as the Company deems prudent.

## XI.  INSURANCE:

A. You agree that you will, at your sole expense, obtain and maintain during the term of this Agreement policies of insurance as described in the EA Manual, as may be amended from time to time. Such policies must be obtained from companies satisfactory to the Company and must be adequate to protect against all expenses, claims, actions, liabilities, and losses related to the subjects covered by the required policies.

B. Where specified, each policy must name the Company as an additional insured and must contain a severability of interest/cross liability endorsement. Each policy must also expressly provide that it will not be subject to material change or cancellation without at least thirty (30) days prior written notice to the Company.

C. You must furnish the Company with proof of insurance upon request by the Company. If, in the Company's opinion, such policies do not afford adequate protection for the Company, the Company will so advise you, and if you do not furnish evidence of acceptable coverage within fifteen (15) days after being requested to do so by the Company, the Company will have the right to obtain additional insurance at your expense and deduct the cost of such insurance plus a processing fee from monies owed you by the Company.

## XII.  FINANCIAL INFORMATION:

You shall maintain all books and records relating to the business under this Agreement including, but not limited to, all checkbooks, check registers, deposit receipts, and general ledgers for a period of not less than five years after the close of the fiscal year to which they relate. All of the foregoing records shall be open and available for inspection or audit at any time during normal agency hours without notice by the Company or its designated auditors and you shall have the duty to cooperate fully with the party(ies) making such inspection or audit.

## XIII.  POLICIES IN YOUR ACCOUNT:

Policies which are credited to your account are described in the Supplement. While this Agreement is in effect, the Company will leave in your account all policies credited to your account so long as the policyholder resides within a state in which you are licensed and appointed by the Company, except that the Company may remove any policy from your account at the request of a policyholder.

## XIV.  MONEY COLLECTED BY YOU:

All payments collected or received by you in the performance of this Agreement are the property of the Company, will be treated as trust funds, and will be promptly transmitted to the Company without deduction for any purpose in the manner specified by the Company. You must maintain accurate records and current remittance reports which may be inspected by the Company at any time without notice and which shall be submitted to the Company in accordance with its rules and procedures.

6

XV.  **COMPENSATION:**

A.  The sole compensation to which you will be entitled for services rendered pursuant to this Agreement will be the commissions set forth in the Supplement, as may be amended from time to time.  The Company will pay you your commissions at the time and in the manner set forth in the Supplement. However, due to the inherent uncertainty of business conditions, the Company reserves the right to increase or decrease any commission amounts and to change the commission rules.  If the Company changes commission amounts, it will provide you with written notice of the changes at least ninety (90) days prior to the date on which they are to become effective.

B.  The Company may provide you with such bonuses, awards, prizes, and other remuneration based on performance, if any, as it may prescribe in its sole discretion.

C.  If any application for insurance is rejected, or any policy is surrendered or canceled, in whole or in part, for any reason, before the expiration of the policy period, or if any premium is reduced or any overpayment made to you, or if any premium paid is not earned by the Company, the commissions paid to you on the amount returned or credited to the policyholder, or the amount overpaid to you, will constitute an indebtedness of yours to the Company and will be charged to you or recovered from you by reducing any future commissions, awards, or bonuses due you.

XVI.  **TRANSFER OF INTEREST:**

A.  This Agreement is personal to you and is being entered into in reliance upon and in consideration of your skills, qualifications, and representations. Accordingly, you may not execute a transfer of your interest in this Agreement or any interest in the business under this Agreement including, but not limited to, any sale, assignment, conveyance or the granting of any lien, security interest, pledge, or mortgage thereof, without the prior written approval of the Company.  A transfer of interest in this Agreement is described in the Supplement and EA Manual and includes, but is not limited to, any sale, merger, or assignment, in whole or in part, directly, indirectly, or contingently, of this Agreement or any rights or obligations under it.  You have the obligation to notify the Company of a proposed transfer and to request Company approval.

B.  You have an economic interest, as defined in this Agreement and the incorporated Supplement and EA Manual, in your Allstate customer accounts developed under this Agreement.  Subject to the terms and conditions set forth in this Agreement and the incorporated Supplement and EA Manual, you may transfer your entire economic interest in the business written under this Agreement upon termination of this Agreement by selling the economic interest in the business to an approved buyer. The Company retains the right in its exclusive judgment to approve or disapprove such a transfer. Any failure to disclose and obtain the prior written approval of the Company for any transfer of your interest in this Agreement or any interest in the business under this Agreement shall constitute a breach of this Agreement and cause for termination of this Agreement.

C.  Approval of a proposed transfer of your entire interest in this Agreement will be conditioned upon the termination of this Agreement and the execution of a then current agency agreement by the proposed transferee.

D.  Policies in your account (Section XIII. above) will be transferred to an approved transferee.

XVII.   **TERMINATION OF AGREEMENT:**

    A.  This Agreement will be terminated automatically:

        1.  On the effective date of any transfer of your entire interest in this Agreement, whether approved or not, as described in Section XVI. above;

        2.  Upon your death or permanent incapacity;

        3.  Upon your loss of any required agent license; or

        4.  Upon the surrender of, or the election not to renew, the Company's license to sell insurance in all lines in the state in which your sales location is located or the discontinuation of the sale of insurance in the state.

    B.  This Agreement may be terminated:

        1.  At any time by mutual agreement of the parties in writing;

        2.  By either party, with or without cause, upon providing ninety (90) days prior written notice to the other, or such greater number of days as is required by law.  Once written notice of termination has been given by either party, you will, immediately upon request of the Company, cease to act or to represent yourself in any way as an agent or representative of the Company, but you will receive compensation pursuant to Section XV. from the Company for the period up to and including the specified termination date; or

        3.  Alternatively, by the Company, with cause, immediately upon providing written notice to you. Cause may include, but is not limited to, breach of this Agreement, fraud, forgery, misrepresentation or conviction of a crime.  The list of examples of cause just stated shall not be construed to exclude any other possible ground as cause for termination.

XVIII.   **OBLIGATIONS UPON TERMINATION OF AGREEMENT:**

Except as otherwise provided in a subsequent agreement between you and the Company, upon termination of this Agreement, you agree that:

    A.  You will not act or represent yourself in any way as an agent or representative of the Company.

    B.  You will immediately return all property belonging to the Company, or dispose of it in such manner as the Company specifies.

    C.  You will immediately cease to use such telephone numbers referenced in Section IX. above and execute an Order of Transfer of Responsibility for such numbers in your name to the Company or to any party the Company designates, and you will immediately notify the telephone company of any such transfer.  You will be responsible for all charges incurred up to the date of execution of the transfer.

    D.  For a period of one year following termination, you will not solicit the purchase of products or services in competition with those sold by the Company:

        1.  With respect to any person, company, or organization to whom you or anyone acting on your behalf sold insurance or other products or services on behalf of the Company and who is a customer of the Company at the time of termination of the Agreement;

        2.  With respect to any person, company, or organization who is a customer of the Company at the time of termination of this Agreement and whose identity was discovered by you as a result of your status as a Company agent or as a result of your access to confidential information of the Company; or



3.  From any office or business site located within one mile of the agency sales location maintained pursuant to Section V. of this Agreement at the time this Agreement is terminated.

In the event that such one year period or one mile distance exceeds the time or distance permitted by any applicable law, such period or distance will be automatically adjusted to the maximum period or distance permitted by such law. If any other provision in this paragraph D. conflicts with any existing law, it will be applied to the extent permitted by such law.

E.  You will immediately cease and desist from any and all use of Company service marks and trade names. You will immediately return to the Company all property in your possession or under your control bearing any Company service mark or trade name, or dispose of it in such manner as the Company specifies.

F.  You recognize that a breach of any of the foregoing provisions will cause irreparable damage to the Company's business and that such damage will be difficult or impossible to measure. You agree that in the event of any such breach, the Company, in addition to such other rights and remedies as it may have, will be immediately entitled to an order granting injunctive relief from any court of competent jurisdiction against any act which would violate any such provision, without the necessity of posting a bond, and you waive any defense to an application for such order, except that the violation did not occur. You agree that the Company will be entitled to an award of reasonable attorneys' fees in the event that it is successful in an application for injunctive relief or in an action based upon breach of the foregoing provisions.

G.  You recognize and acknowledge that each of the foregoing provisions of this Section XVIII. is reasonable and necessary to protect and preserve the legitimate business interests of the Company, its present and potential business activities, and the economic benefits derived therefrom. You recognize and acknowledge that the foregoing provisions will not prevent you from earning a livelihood and are not an undue restraint on you.

## XIX.  NOTICE:

All notices will be deemed to have been given if personally delivered, sent by facsimile transmission, or mailed as follows:

if to the Company:

Allstate Insurance Company
*1200 Atwater Drive, Suite 200*
*Malvern, PA 19355*
Attention: *Maria Ascanio*

if to you:

*Abner Joseph*
*571 Dudley Street, Suite A*
*Boston, MA 02125*

or to such other person or address as any party may furnish or designate to the other in writing.

## XX.  GENERAL PROVISIONS:

A.  This Agreement may not be modified except by a written agreement between the Company and you which expressly states that it modifies this Agreement. No other written statements, representations, or agreements and no oral statements, representations, or agreements will be effective to modify this Agreement. No representative of the Company will have authority to modify this Agreement, except as provided in this Section XX. Nothing in this Section will affect the Company's right to amend the Supplement, EA Manual, and Agency Standards, as provided in Section I.C.

B. You acknowledge that you have reviewed the Supplement, EA Manual, and Agency Standards and that you have an ongoing responsibility to review all changes to the Supplement, EA Manual and Agency Standards issued by the Company and agree to be bound by them.

C. References in this Agreement to the Supplement, EA Manual, and Agency Standards are references to the Supplement, EA Manual, and Agency Standards, including any changes which may be made from time to time and distributed to you by the Company.

D. You acknowledge that you have read this Allstate R3001S Exclusive Agency Agreement, understand it, and agree to be bound by its terms.

E. The authority granted to you under this Agreement is nonexclusive. The term "Exclusive" as used in the title of this Agreement refers to the obligations assumed by you under Section I.E.

F. The descriptive headings of this Agreement are intended for reference only and will not affect the construction or interpretation of this Agreement.

G. If any provision or part of this Agreement is held invalid for any reason, such invalidity will not affect any other provision or part of this Agreement not held invalid, and such remaining provisions and parts will remain in full force and effect.

H. The failure of either party to insist upon the performance of any of the terms of this Agreement in any one or more instances will not be construed as a waiver or relinquishment of the future performance of any such term. The obligation of the parties with respect to any such future performance will continue in full force and effect.

I. Nothing in this Agreement shall be construed to confer upon any person or entity other than the Company and you any rights under this Agreement.

J. This Agreement, and the obligations or rights hereunder, shall not be assignable by you, except as provided by Section XVI. The rights and obligations of the parties to this Agreement shall be binding upon and inure to the benefit of the Company and its successors and assigns.

K. This Agreement may be executed in counterparts, each of which will be deemed an original.

IN WITNESS WHEREOF, the Company and Agency have caused this Agreement to be executed by their authorized representatives and the parties hereby accept the terms of this Agreement.

ALLSTATE INSURANCE COMPANY

_____
(authorized representative)

_____
(date)

YOU

_____
(name)

_____
(date)